# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. <u>12-80238-Cr-Ryskamp</u>

UNITED STATES OF AMERICA,

      **Plaintiff,**

vs.

SHANE M. KLESHINSKI,

      **Defendant.**

_____/

## <u>PLEA AGREEMENT</u>

The United States Attorney's Office for the Southern District of Florida ("this Office") and Shane M. Kleshinski (hereinafter referred to as the "defendant") enter into the following agreement:

1.  The defendant agrees to plead guilty to the one-count Information, which charges him with conspiracy to commit mail fraud, in violation of Title 18, United States Code, Section 1349.

2.  The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider

the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range.  Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3.  The defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of up to twenty years, followed by a term of supervised release of up to three years.  In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000 or twice the gross gain or loss resulting from the offense, whichever is greater, and must order restitution.

4.  The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant.  The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.  If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

5.  This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background.  Subject only to the express terms of any agreed-upon sentencing recommendations

2

contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6. The United States agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. The United States, however, will not be required to make this motion and this  recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct and the defendant's financial status; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. This Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

a.   Base Offense Level: That the base offense level is seven, pursuant to Section 2B1.1(a)(1);

b.   Loss: That the relevant amount of actual, probable or intended loss resulting from the offense committed in this case is more than $120,000, but not more than $200,000, which results in a ten-level enhancement, pursuant to Section 2B1.1(b)(1)(F) of the Sentencing Guidelines; and 

c.   Number of Victims: That the offense involved 50 or more victims, resulting in a four-level enhancement, pursuant to Section 2B1.1(b)(2)(A). 

8.   The defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the defendant the right to appeal the sentence imposed in this case.  Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing.  The defendant understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291.  However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of appellate rights.  By signing this agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this agreement with the defendant's attorney.  The defendant further agrees, together with the United States, to request that the Court

4

enter a specific finding that the defendant's waiver of the defendant's right to appeal the sentence to be imposed in this case was knowing and voluntary.

9. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

10. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 2/28/13              By: _____
                              ADRIENNE RABINOWITZ
                              ASSISTANT UNITED STATES ATTORNEY

I have read and carefully reviewed every part of this Agreement with my attorney, Robert Franklin, and voluntarily agree to its terms.  No one has threatened or coerced me in any way into entering into this Agreement.

Date: 2/28/13

SHANE M. KLESHINSKI
DEFENDANT


I, Robert Franklin, am the attorney for Shane M. Kleshinski.  I have explained to him the terms and conditions set forth above and are satisfied that he understands and agrees to them.

Date: 2/28/13

ROBERT FRANKLIN, ESQ.
ATTORNEY FOR DEFENDANT

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-80238-Cr-RYSAKAMP

UNITED STATES OF AMERICA,

vs.

SHANE KLESHINSKI,

Defendant.
_____/

## FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

If this case had proceeded to trial, the Government would have established beyond a reasonable doubt that defendant Shane Kleshinski and his co-conspirators did knowingly and willfully conspire with each other and with others to knowingly and with intent to defraud execute and cause the execution of a scheme and artifice to defraud timeshare owners and to obtain money from timeshare owners, by means of materially false and fraudulent pretenses, representations, and promises, and did cause to be delivered certain mail matter by private and commercial interstate carriers for the purpose of executing said scheme.

The elements of this offense are as follows:

First:      That two or more persons in some way or manner agreed to try to accomplish a common and unlawful plan to commit mail fraud, as charged in the information;

Second:    That the defendant knew the unlawful purpose of the plan and willfully joined in it;

The elements for mail fraud are as follows:

First:      That the defendant knowingly devised or participated in a scheme to defraud someone, or obtain money or property, using false of fraudulent pretenses, representations, or promises;

Second:    That the false or fraudulent pretenses, representations, or promises were about a material fact;

Third:      That the defendant acted with intent to defraud; and

-1-

Fourth:        That the defendant used a private or commercial interstate carrier by depositing or causing to be deposited with the carrier something meant to help carry out the scheme to defraud.

To prove that the defendant committed the offense charged in the Information, the Government would establish beyond a reasonable doubt the following evidence:

Beginning in approximately July 2009, co-conspirator Michael W. Franzenburg established International Resort Solutions LLC (IRS), a Florida limited liability company, which was initially located in Lake Worth, Florida, and then West Palm Beach, Florida. IRS was purportedly in the business of providing timeshare marketing and sales services to timeshare owners. In truth, throughout its operation, IRS never provided any legitimate services to its customers.

In order to locate a steady stream of "customers" for IRS, Franzenburg arranged to have various co-conspirators set up boiler rooms throughout Palm Beach County. The boiler rooms were staffed with telemarketers who would cold call timeshare owners throughout the United States and Canada for the sole purpose of extracting advanced fees from them. Each of the boiler rooms was controlled by one or two individuals referred to as boiler room owners. These owners would hire managers who would oversee the day-to-day activities of the boiler rooms, including the supervision of the telemarketers.

Under the direction and control of the boiler room managers and with the knowledge and consent of the boiler room owners, the telemarketers would call timeshare owners throughout the United States and Canada to induce them to pay up-front fees for purported timeshare marketing and sales services. The telemarketers would routinely make false and fraudulent representations to the timeshare owners about IRS's services, including falsely claiming that IRS had buyers for their timeshares, falsely representing that IRS had closings scheduled for their timeshares, and/or falsely stating that IRS would actively market their timeshares to potential buyers.

When a timeshare owner expressed interest in IRS's services, the telemarketer would direct him to pay an advanced fee, which typically ranged from $999 to $2,996, for purported closing and/or marketing costs. In most instances, the timeshare owner would pay the fee by credit card over the telephone. These payments were typically processed the next day by a merchant account set up by IRS. After the credit card processing fees were paid, the remainder of the credit card payments were transferred to the IRS bank account. When Frantzenburg received the payments, he deducted a 35% operating fee and then paid the remaining 65% to the boiler room owners. The owners paid the expenses and salaries for their respective boiler rooms and then kept the remaining profits for themselves. Although IRS collected millions of dollars in fees from customers, the defendants never provided any timeshare services.

To conceal the manner in which the IRS proceeds were being distributed, Franzenburg made some of the IRS checks and wire transfers payable to corporations controlled by the boiler room owners. Certain defendants also engaged in a check cashing scheme in order to conceal their receipt

-2-

of the income from IRS.

In an attempt to conceal the fact that the telemarketers had made numerous false and fraudulent representations to the timeshare owners, IRS sent the timeshare owners, via Federal Express, sanitized sales and marketing contracts which did not include any of the false and fraudulent statements. The timeshare owners were directed to sign and return these contracts to IRS. The written contracts were retained by IRS purportedly as proof that IRS never made any fraudulent representations to the timeshare owners.

In approximately October 2009, defendant Shane Kleshinski began working as an "opener" and "closer" at IRS. An "opener" was responsible for placing cold calls to individuals whose names were listed on lead sheets provided, in most instances, by IRS. If the customer was interested in selling his timeshare unit, the opener would transfer the call to a "closer." The "closer" was responsible for completing the sale and getting the customer to send the advanced fee to IRS. As both an "opener" and "closer," Kleshinski routinely made false and fraudulent representations to the timeshare owners to induce them to send advanced fees. As outlined above, the false and fraudulent statements made by Kleshinski to the timeshare owners included falsely claiming that IRS had buyers for their timeshares, falsely representing that IRS had closings scheduled for their timeshares, and/or falsely stating that IRS would actively market their timeshares to potential buyers. During the time he worked at IRS, Kleshinski contacted approximately 49 timeshare owners throughout the United States and, through false and fraudulent representations, induced them to pay IRS approximately $140,000 for timeshare marketing and sales services, which Kleshinski knew IRS would never provide.

Wifredo A. Ferrer
United States Attorney

By: _____          ___2/28/13___
    Adrienne Rabinowitz                 Date
    Assistant United States Attorney

I have read and reviewed with my attorney the above statement of facts and stipulate that the facts are true and correct.

_____          ___2/28/13___
Shane Kleshinski                    Date
Defendant

_____          ___2/28/13___
Robert Franklin, Esq.               Date
Counsel for Defendant

-3-